# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RONNIE THOMAS,

        Applicant,

v.                                No.  CIV-04-0125 JH/LAM

ROBERT A. ULIBARRI, et al.,

        Respondents.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

1.     **THIS MATTER** is before the Court on ***Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus as Time Barred and Without Merit*** (*Doc. 30*) (hereinafter, "Motion to Dismiss"), filed on September 16, 2005.[2]  The Court has considered the parties' submissions and relevant law, and reviewed the voluminous record of this case and the additional materials submitted by Respondents pursuant to the Court's ***Memorandum Opinion and Order*** (*Doc. 22*), filed on March 2, 2005.[3]  For the reasons set forth below, the Court recommends that Respondents' Motion

---

[1]**Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

[2]Respondents' Motion to Dismiss is contained in a document that also includes their response to Applicant Ronnie Thomas' pending ***Motion to Compel*** (*Doc. 28*).  To facilitate automated docketing, the United States District Court for the District of New Mexico requires "all practitioners before the Court [to] . . . submit a separate pleading for each matter upon which adjudication or a ruling of the Court is sought."  Administrative Order No. Misc. 92-88.  Thus, Respondents' motion and response should have been filed separately.  The Court notes this so that, in the future, counsel and parties will comply with this Administrative Order.

[3]The additional materials submitted to the Court by Respondents consist of: (1) a nine page police report, dated January 11, 1999, related to Mr. Thomas' arrest in Albuquerque, New Mexico, on January 11, 1999; (2) a one

(continued...)

to Dismiss be **DENIED IN PART** and **GRANTED IN PART**, that Mr. Thomas' ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) (hereinafter, "Application") be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**.  Mr. Thomas has also filed a ***Motion to Compel*** (*Doc. 28*) and a ***Motion for the Federal Court to Adjudicate the Petition for [H]abeas Corpus Under 2254*** (*Doc. 36*) each of which the Court recommends be **DENIED** as moot.

2.      Mr. Thomas is incarcerated and is proceeding *pro se*.  On February 4, 2004, Mr. Thomas initiated this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 by filing his Application.  Although Mr. Thomas' claims are somewhat difficult to follow, the Court liberally construes his claims as follows: (a) he was unlawfully indicted by the grand jury based on the hearsay testimony of police officer M. Lujan; (b) he was unlawfully convicted based on the prosecution's knowing use of false and perjured testimony at trial by police officers J. Rajaee and M. Lujan; (c) his constitutional rights were violated by the prosecution's failure to disclose, prior to trial, that Officer Rajaee's trial testimony would include additional statements that were not included in his police report about the incident that led to Mr. Thomas' arrest; (d) he was denied effective assistance of counsel at trial by his attorney's failure to investigate and call key witnesses at trial; and (e) he was denied effective assistance of counsel at trial by his attorney's failure to object to the false testimony

---

[3](...continued)
volume record proper (hereinafter, "Record Proper") from Mr. Thomas' appeal of his conviction and sentencing in *State of New Mexico v. Ronnie Thomas, et al.*, Case No. CR-99-00301, Second Judicial District Court, New Mexico, to the Court of Appeals of the State of New Mexico; and (3) ten volumes of transcripts of proceedings in Case No. CR-99-00301.

of Officers Rajaee and Lujan and by his attorney's failure to impeach them regarding their false testimony.[4]

3.    Mr. Thomas has asserted two other claims in his Application.  These are claims that: (a) he was prejudiced because his criminal case was joined with those of other defendants and he was the only defendant to go to trial; and (b) he was denied trial and hearing transcripts necessary to prove his case.  As the Court discusses below, these claims are conclusory and the Court recommends that they be **DENIED** on that ground.  Mr. Thomas has also requested an evidentiary hearing which the Court recommends be **DENIED**.

4.    On March 16, 2004, Respondents filed their ***Answer*** (*Doc. 9*) (hereinafter, "Answer") to Mr. Thomas' Application.  In their Answer, Respondents asserted no affirmative defenses to Mr. Thomas' claims and conceded that Mr. Thomas had exhausted state court remedies for his claims.  This concession was expressed in Respondents' affirmative statement in the Answer that "Petitioner has exhausted the claims contained in his Application for Federal Habeas Corpus relief by bringing them before the highest state court."[5]

5.    On May 25, 2005, Respondents submitted the Record Proper and the other additional materials described in footnote 3, above, which the undersigned received on June 22, 2005. Thereafter, on September 16, 2005, Respondents filed their Motion to Dismiss, to which Mr. Thomas filed responses on September 28, 2005, and October 5, 2005 (*Docs. 32 and 34*).  Respondents did

---

[4]Because Mr. Thomas is a *pro se* litigant, his Application must be construed liberally and held to a less stringent standard than pleadings drafted by attorneys.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court notes that it construes Mr. Thomas' claims somewhat differently than Respondents do in their ***Answer*** (*Doc. 9*) to the Application (hereinafter, "Answer").  *See* Answer at 1-2.  However, the Court also notes that in construing Mr. Thomas' claims, it has considered the voluminous attachments to his Application, and the supplemental allegations and exhibits related to his claims contained in his ***Motion for Evidentiary [H]earing*** (*Doc. 13*) and his ***Motion to Amend to [sic] Evidentiary [H]earing*** (*Doc. 20*), as explanatory documentation only and not as the incorporation by reference of additional federal claims.

[5]*See* Answer (*Doc. 9*), at 1, ¶ 3.

not file any replies to Mr. Thomas' responses to the Motion to Dismiss.  In the Motion to Dismiss, Respondents contend that the Application should be denied because: (1) it was filed after expiration of the one-year limitations period enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter, "AEDPA");[6] and (2) it has no merit.

## I. Factual and Procedural Background

6.      On January 25, 1999, a state grand jury returned a three-count indictment against Mr. Thomas, charging him with: (a) trafficking (by distribution) of cocaine; (b) contributing to the delinquency of a minor; and (c) conspiracy to commit trafficking (by distribution) of cocaine or, in the alternative, conspiracy to commit contributing to the delinquency of a minor. *See* Record Proper at RP0002-RP0004.  Prior to trial, the prosecution withdrew alternative Count 3 of the indictment. *See id.* at RP0065.

7.      Mr. Thomas' indictment arose out of a police sting operation in Albuquerque, New Mexico, on January 11, 1999, involving the exchange of a handgun for cocaine. *See* Transcript of Proceedings, July 20, 1999, at TR-21-TR-26.  Officer Rajaee testified at trial that on that date, while working undercover, he approached Vernon Green with a handgun and expressed an interest in trading the gun for crack cocaine. *Id.* at TR-26-TR-28.  He testified that Mr. Green entered his vehicle and took him to an apartment complex at 301 Western Skies where Mr. Thomas' nephew, Chris Thomas, expressed an interest in buying the gun for $100.00. *Id.* at TR-28-TR-29. Officer Rajaee testified that he told Chris Thomas he wanted ten rocks of cocaine for the gun and that Chris Thomas said, "Well I only have three on me right now . . . let me go up the street . . . drive me up the street and let me see if I can get a dub sack." *Id.* at TR-29.  Officer Rajaee testified that a "dub sack" was ten rocks of cocaine in a sack. *Id.*  Officer Rajaee testified that Chris Thomas entered his

---

[6]Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).

vehicle and they drove up the street to another apartment complex called the Whispering Sands Apartments where Chris Thomas left the vehicle, ran to some apartments, and then came back saying that "he wasn't there, he couldn't get it, or something like that." *Id.* at TR-29-TR-30.  Officer Rajaee testified that they drove back to the apartment complex at 301 Western Skies where Chris Thomas left the vehicle, ran to an area between two buildings and told him to wait.  *Id.* at TR-30.  Officer Rajaee testified that while Chris Thomas was gone, Mr. Thomas approached him from the area where Chris Thomas had run and asked to see what he had.  *Id.*  Officer Rajaee testified that he showed Mr. Thomas the gun and Mr. Thomas seemed pleased and told him to come up to an apartment and "we can do it up there."  *Id.*  Officer Rajaee testified that he refused to leave his vehicle and Mr. Thomas told him not to leave.  *Id.*  Officer Rajaee said that at that point Mr. Thomas said he'd be right back and left.  *Id.* at TR-31.  Officer Rajaee testified that he stayed inside his vehicle and Mr. Thomas walked back into the area between the apartments.  *Id.*  Officer Rajaee testified that Mr. Green then got back into his vehicle and told him to back the vehicle up and said, "We'll do the deal right there because it would be closer to the apartment."  *Id.*  Officer Rajaee testified that he backed up the vehicle and a short time later Chris Thomas returned to the vehicle at its driver's side window and Officer Rajaee noticed that Mr. Thomas was standing up on a curb watching intently.  *Id.*  Officer Rajaee testified that Chris Thomas then handed him a few stones of crack cocaine and he started to show Chris Thomas how the gun worked.  *Id.*  Officer Rajaee testified that he gave the arrest signal and that Chris Thomas was grabbing the gun.  *Id.*  Officer Rajaee testified that at that point Mr. Thomas was yelling, "Hurry up, hurry up, just get it, just hurry up."  *Id.*  Officer Rajaee gave the following additional account of what Mr. Thomas said and did at that time:

> A.      Mr. [Chris] Thomas then handed me a quantity of crack cocaine, a few stones, and I started to show him how the gun worked.  And he was grabbing it, and I'd

given the arrest signal at that time.  And I'm holding the gun, and at that point he's -- Mr. [Ronnie] Thomas is yelling, 'Hurry up, hurry up, just get it, just hurry up.'

Q.      By 'Mr. Thomas' who are you referring to?

A.      Ronnie Thomas.  He's yelling for Chris Thomas - -

Transcript of Proceedings, July 20, 1999, at TR-31.

A.      Ronnie Thomas at that point was looking on intently.  I mean he was watching carefully, attempting to see what was going on, yelling at Chris Thomas, 'Hurry up, hurry up, just get it, hurry up.'  Yelling loud directly at Chris Thomas.

*Id.* at TR-32-TR-33.

Q.      Now, you had mentioned that once Christopher Thomas gave you the drugs, that the Defendant [Mr. Thomas] was telling you to hurry up, just get it?

A.      Yeah, I think he was talking to Chris, it seemed like.

Q.      Okay.  Do you recall his exact words?

A.      I remember him yelling, 'Hurry up, hurry up, hurry up.' And at some point I think he said, 'Just get it and hurry up, just hurry up and get it.'  I didn't know if he thought Chris was asking me how to manipulate the firearm, but it was obvious that I was trying to show him, so I don't know what Ronnie Thomas was thinking that was going on between the two of us, but at that point he was yelling for him to 'Hurry up, just get it, just hurry up, just get it, just bring it.'  I remember him saying that, 'Just bring it.'

Q.      Do you have an opinion based on what was going on there in terms of what the Defendant [Mr. Thomas], his involvement was?

A.      Yes.

Q.      What's that opinion?

. . . .

THE WITNESS:  It was my opinion that at this point it was obvious that Ronnie was supervising this transaction.  And one of the reasons I say that is because it wasn't like a passive onlooker.   I mean he was - - when I looked back, he was staring.  He focused kind of the way I'm looking at you guys right now.  He's looking intently trying to see what is going on.  He's paying specific attention to this transaction between me and Chris Thomas.  And he is yelling at him like I yell at my son, 'Hurry

6

up, hurry up, get it, just come on, let's go, hurry up.'  Loud, aggressive, direct in his direction.  There's nobody else in that immediate line of sight who he could have been directing that speech toward.

*Id.* at TR-40-TR-42.  Officer Rajaee testified that Chris Thomas pulled the gun from him and the magazine broke loose from the weapon.  *Id.* at 35.  Officer Rajaee testified that assisting police officers then drove up and these officers, including Officer Lujan, chased Chris Thomas and caught him. *Id.* at TR-42.  Officer Rajaee testified that Chris Thomas, Vernon Green and Mr. Thomas were arrested and taken into custody.  *Id.* at TR-42-TR-44.

8.      Mr. Thomas testified at trial and his testimony painted a different picture.  *See* Transcript of Proceedings, July 21, 1999, at TR-20-TR-55.  As the trial judge noted in her ruling on Mr. Thomas' motion for directed verdict during the trial, the outcome of Mr. Thomas' case turned on the conflicting testimony of Officer Rajaee and Mr. Thomas and their credibility as witnesses.  *Id.* at TR-58.  Mr. Thomas testified that he talked to Officer Rajaee at his apartment complex on January 11, 1999, and asked him to show him the gun because he knew someone who was interested in buying it.  *Id.* at TR-23.  Mr. Thomas testified that Officer Rajaee said he wanted "[t]en rocks" for the gun and that he told Officer Rajaee he did not have ten rocks.  *Id.*  Mr. Thomas testified that he asked Officer Rajaee if he would take $100.00 for the gun and he said, "No, I want ten rocks."  *Id.*  Mr. Thomas testified that he then walked off and went back to his apartment.  *Id.*  Mr. Thomas testified that he talked to his nephew, Josh Thomas, and told him with reference to Officer Rajaee, "Hey, I wouldn't mess with that because the guy's acting shady."  *Id.* at TR-23-TR-24.  Mr. Thomas testified that his mother, who was in the apartment, told him to go get Chris Thomas and tell him to come in.  *Id.* at 24.  Mr. Thomas testified that he left the apartment, sensed something was wrong, and could see Chris Thomas standing at the window of Officer Rajaee's vehicle. *Id.* at TR-24-TR-25.

7

Mr. Thomas testified that he called out to Chris while he was walking, saying, "Chris, come on in,

Chris." *Id.* at 25.  Mr. Thomas testified that he said and did the following at that point in time:

> As I'm hollering my voice is getting louder and louder because he's not responding to what I'm saying to him.
>
> I get about right here, and I know something is wrong.  So basically I'm hollering, I say, 'Hey, Chris, come the fuck on.  Get away from there.  Come on now.'  So I move up a little further.  I get right here, but I put it like this, I'm right here, so my view is I'm seeing this.  I see this car here.  It's slowly moving up.  And by this time here this car here is backing up but it's halfway backed up.  It's in the position and already I know what's going on.  I said, 'Oh, my God.'  I tell Chris, 'Come the fuck on, now.'  So all this stuff is occurring at once.

*Id.*  Mr. Thomas also gave the following descriptions of what he said to Chris Thomas:

> Q.      Okay.  What exactly did you yell?  Do you recall?
>
> A.      I remember as I was walking up, basically it started off as a gradual, 'Yeah, Chris, come on in the house, grandma wants you.'  And as I got closer and closer and felt the danger and seen the danger, you know, I'm basically got - - I - - basically, I told him to get - - I said, 'Get the fuck away from that truck and come on up here now.'

*Id.* at TR-28.

> Q.      Did you ever tell Chris to grab the gun or get the gun or anything.
>
> A.      No.  No.  I remember distinctly yelling at him, telling him - - as I'm walking up, I started yelling at Chris, okay, I guess about five yards - - no, ten yards after I come out of my mom's house, I remember seeing Chris, I yelled at him, I said, 'Chris, come on in the house.  Your grandmother wants you.'  As I get up a little further, I said, 'Chris, hurry up and get in the house.'  When I get to right here, by that time I see the scenario, what's going - - you know, what's happening.  I said, 'Get the fuck away from the truck and let's go,' or something to that effect.

*Id.* at TR-29.  Mr. Thomas testified that he panicked and walked fast back to the apartment.  *Id.* at

TR-25.  Mr. Thomas testified that he went inside the apartment and went straight to the patio where

he saw the police roughing up Chris Thomas, and shouted and cussed at them.  *Id.* at TR-25-TR-26.

Mr. Thomas testified that he shouted down at the police, "Hey, he's a minor.  You ain't [sic] got to

treat him like that.  That's a child.  If you rough him up anymore, I'm going to come down there and

kick your . . . I'll kick your fucking ass."  *Id.* at TR-26.  Mr. Thomas testified that the police pointed

up at him and said, "Get him," and he was arrested at the apartment.  *Id.* at TR-26-TR-27.

Mr. Thomas also testified that he did not use Chris Thomas to deal drugs.  His testimony on that

subject was as follows:

> Q.     Okay.  Ronnie, did you ever use Chris to deal in cocaine, crack cocaine or any
> other illegal drug?
>
> A.     No, I have not.  Like - - I would like to stress this, my nephew is bull-headed.
> He has his own problems.  I try to deal with them and teach him correctly, but I'm not
> responsible for his actions.
>
> Q.     Have you ever encouraged Chris in any way to deal in cocaine, crack cocaine,
> heroin, marijuana, PCP, mushrooms, any type of illegal drug?
>
> A.     No.
>
> Q.     Would you do so?
>
> A.     No.
>
> Q.     Why is that?
>
> A.     It's against my principles, basically.  I have a substance abuse problem.  And,
> you know, like I see what the effect is on people and what it can do to people, and
> he's a child.  You know, basically, in my neighborhood that's all they're selling dope
> is to children, the whole neighborhood.  There's [sic] no grownups up there.  It is
> basically kids running around with guns and gang affiliation and selling dope.  That's
> what they do up in Western Skies.

*Id.* at TR-35-TR-36.

9.     Mr. Thomas was tried on July 19, 1999 through July 22, 1999, and convicted by a jury

of: (a) trafficking (by distribution) of cocaine; (b) contributing to the delinquency of a minor; and

(c) conspiracy to commit trafficking (by distribution) of cocaine.  *See* Record Proper at RP0070,

RP0085-RP-0088.

9

10.     After his trial, Mr. Thomas filed a motion for new trial that was denied.  *See id.* at

RP0096 - RP0097, RP0139.  Later he filed a second motion for new trial, the disposition of which

is unclear in the record.[7]  *See id.* at RP0149-RP0150, RP0182 - RP0183.

11.     On December 18, 2000, the trial court entered its judgment, sentence and commitment

on Mr. Thomas' convictions.  *See* Record Proper at RP0209 - RP0210.  Mr. Thomas was sentenced

to a total of twelve years of imprisonment, followed by two years of parole.  *See id.* at RP-0210.

12.     Mr. Thomas appealed his conviction to the New Mexico Court of Appeals and his

attorney raised four issues in the docketing statement.[8]  After the Court of Appeals issued a notice

of proposed summary affirmance and Mr. Thomas changed counsel, he filed a combined motion to

amend the docketing statement and memorandum in opposition to the proposed summary affirmance.[9]

13.     In a memorandum opinion filed on December 27, 2001, the Court of Appeals denied

Mr. Thomas' motion to amend the docketing statement as not raising viable issues and affirmed

Mr. Thomas' convictions.  *See* Answer, Exhibit M at 1, 6.  With regard to the motion to amend the

---

[7]It appears that the motion was denied verbally at a hearing held on May 2, 2001, but no order was entered ruling on the motion.  *See* Record Proper, Case History at 17; *see also* Transcript of Proceedings, May 2, 2001, at TR-57-TR-68.

[8]These issues were: (1) whether there was sufficient evidence to support the jury verdicts; (2) whether unspecified hearsay statements of police officers testifying at the grand jury were in error; (3) whether the trial court erred in denying Mr. Thomas' motion for disclosure of a confidential informant; and (4) whether Mr. Thomas' trial counsel provided ineffective assistance of counsel.  *See* Answer, Exhibit J at 4.

[9]This motion sought to amend the docketing statement to add the following issues: (a) Mr. Thomas' convictions must be reversed because the grand jury was not instructed on the elements of the crimes that he was charged with; (b) the trial court erred in allowing Officer J. Rajaee to testify at trial because Rajaee did not testify at the grand jury, his testimony at trial was inconsistent with his police report, and he was not present during the transaction that gave rise to Mr. Thomas' arrest; and (c) the State violated its duty to disclose evidence by not disclosing to Mr. Thomas prior to trial that Officer J. Rajaee's testimony at trial regarding Mr. Thomas' statements on the date of his arrest would add details not described in the police report.  *See* Answer, Exhibit L at 2, 12-14.  In this motion, Mr. Thomas conceded that these additional issues were not raised below or excepted from preservation requirements; however, Mr. Thomas argued that these issues should be considered because his trial counsel was ineffective in failing to preserve these issues and failure to consider these issues would violate his right to due process.  *See* Answer, Exhibit L at 2.

docketing statement, the Court of Appeals held that the following issues were not viable because

Mr. Thomas had failed to preserve them below: (a) Mr. Thomas' claim that Officer Rajaee should not

have been allowed to testify at trial because he was not present during the exchange transaction, he

did not testify at the grand jury and his testimony at trial was inconsistent with his police report; and

(b) Mr. Thomas' claim that the State violated its duty to disclose evidence because it did not inform

Mr. Thomas that Officer Rajaee's testimony at trial would add details not described in the police

report. *See* Answer, Exhibit M at 2. The Court of Appeals also held that: (a) the presentation of

hearsay testimony at the grand jury by Officer Lujan did not require reversal where the same hearsay

testimony was not presented by Officer Lujan at trial; and (b) Mr. Thomas' trial counsel was not

ineffective for failing to call as witnesses Chris Thomas, Vernon Green, John Bacon and Anthony

Garcia because this was a matter of tactics and strategy which did not demonstrate ineffective

assistance of counsel. *See* Answer, Exhibit M at 6.

    14.    On January 9, 2002, Mr. Thomas filed a petition for writ of certiorari for the review

of his case by the New Mexico Supreme Court. *See* Answer, Exhibit N at 1.[10] On February 5, 2002,

the New Mexico Supreme Court denied his petition for certiorari, without explanation. *See* Answer,

Exhibit O. The New Mexico Court of Appeals issued its mandate to the state district court on

---

[10]Mr. Thomas presented the following questions in his petition for certiorari: (1) whether the Court of Appeals erred in holding that the evidence was sufficient to sustain his convictions; (2) whether the Court of Appeals erred in holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not require that the jury find beyond a reasonable doubt that he was previously convicted of trafficking in a controlled substance before the trial court could elevate the offense of trafficking to a first-degree felony; (3) whether the Court of Appeals erred in holding that he could not challenge the indictment when it was based on hearsay; (4) whether the Court of Appeals erred in upholding the trial court's failure to compel the state to disclose the name of a confidential informant after the state denied the informant's involvement; (5) whether the Court of Appeals erred in holding that he received effective assistance of counsel; and (6) whether the Court of Appeals violated his constitutional right to an appeal and to due process of law by denying his motion to amend the docketing statement and refusing to consider the issues raised therein. *See* Answer, Exhibit N at 1.

March 26, 2002.  *See* Answer, Exhibit P.  Mr. Thomas did not seek a writ of certiorari from the United States Supreme Court.

15.     On July 29, 2002, after the final disposition of his direct appeal, Mr. Thomas filed a motion for new trial in the New Mexico state district court.  *See* Answer, Exhibit Q.  The state district court summarily denied the motion on August 9, 2002.  *See* Answer, Exhibit R.  Under New Mexico law, it appears that Mr. Thomas had no right of appeal from the denial of this motion. *See* N.M.S.A. § 39-3-3.A. (2006) (governing appeals from district court by defendants in criminal cases); Rule 5-614, N.M.R.A. (2006) (rule of criminal procedure governing motions for new trial in criminal cases).[11]

16.     On January 13, 2003, Mr. Thomas filed a petition for a writ of habeas corpus in New Mexico state district court.  *See* Answer, Exhibit S.  The state district court mistakenly denied the petition on February 10, 2003, because it believed Mr. Thomas' direct appeal was still pending. *See* Answer, Exhibit T at 2.  Mr. Thomas did not appeal the denial.

17.     On March 21, 2003, Mr. Thomas filed an application for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 in case numbered CIV-03-0363 RB/RHS.  *See* Answer, Exhibit U.  That case was dismissed without prejudice on August 18, 2003, pursuant to Mr. Thomas' motion to withdraw his application.  *See* Answer, Exhibit X.

18.     On July 30, 2003, Mr. Thomas filed a second petition for writ of habeas corpus in New Mexico state district court.  *See* Answer, Exhibit Y.  The state district court summarily denied

---

[11]For AEDPA limitations purposes, the undersigned characterizes Mr. Thomas' post-appeal motion for new trial as a post-conviction proceeding that tolled the one-year AEDPA statute of limitations pursuant to 28 U.S.C. § 2244(d)(2).  This is consistent with how New Mexico's highest court characterizes a post-conviction motion for new trial.  *See State v. Lucero*, 130 N.M. 676, 677, 30 P. 3d 365, 366 (N.M. 2001) ("Rule 5-801 . . . *like Rule 5-614*, provides a method for post-conviction relief, specifically the modification of a sentence.") (emphasis added).

the petition on August 27, 2003.  *See* Answer, Exhibit Z at 2.  On October 30, 2003, Mr. Thomas

filed a petition for writ of certiorari for the review of his second habeas proceeding by the

New Mexico Supreme Court.  *See* Answer, Exhibit CC.  The New Mexico Supreme Court denied

his petition, without explanation, on December 17, 2003.  *See* Answer, Exhibit FF.   On

December 29, 2003, Mr. Thomas filed a motion for reconsideration with the New Mexico Supreme

Court, which the court denied, without explanation, on January 9, 2004. *See* Answer, Exhibits GG

and HH.  Mr. Thomas did not seek a writ of certiorari from the United States Supreme Court.

19.     On February 4, 2004, Mr. Thomas filed this action for federal habeas corpus relief

pursuant to 28 U.S.C. § 2254.  *See* Application.

## II.  AEDPA Statute of Limitations

20.     As amended by AEDPA, 28 U.S.C. § 2244(d)(1) imposes a one-year limitation period

on an application for a writ of habeas corpus by a person in custody pursuant to a state court

judgment.  The relevant provision of the statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the judgment
> of a State court.  The limitation period shall run from the latest of - -
>
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
> . . . .

This one-year period of limitation is tolled, *i.e.*, not counted toward any period of limitation, for the

"time during which a properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2).  However,

an application for federal habeas corpus review is not considered an "application for State post-

conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) and does not toll

the limitation period.  *See Duncan v. Walker*, 533 U.S. 167, 181-182 (2001).  This one-year

limitation period may also be subject to equitable tolling, although only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control."  *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).[12] According to the Tenth Circuit, equitable tolling is appropriate "only in rare and exceptional circumstances."  *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (internal quotation marks and citation omitted).  In his Application and his other submissions in this case, Mr. Thomas has failed to make any showing that he is entitled to equitable tolling of the limitation period.

21.     Respondents contend, in their Motion to Dismiss, that this case should be dismissed with prejudice because it was not filed within AEDPA's one-year limitation period.  *See* Motion to Dismiss at 2-5.  The Court agrees with Respondents that the one-year limitation period under AEDPA had expired when Mr. Thomas filed this action on February 4, 2004;[13] however, the Court

---

[12]The United States Supreme Court has not expressly decided the question of whether equitable tolling is applicable to AEDPA's statute of limitations.  *See Pace v. DiGuglielmo*, ___ U.S.___, ___ n.8, 125 S.Ct. 1807, 1814 n.8 (2005).

[13]Mr. Thomas' one-year limitation period under 28 U.S.C. § 2244(d)(1)(A) began to run on May 6, 2002, which was ninety days after the New Mexico Supreme Court denied, on February 5, 2002, his petition for writ of certiorari in his direct appeal.  *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (state court conviction not final, and AEDPA statute of limitations does not begin to run, until after state court of last resort has issued a decision and the United States Supreme Court has denied review or the time for filing a petition for certiorari has passed.)  Thus, absent tolling, his federal habeas application would have been due one year later on May 6, 2003.  Mr. Thomas' initial federal habeas proceeding did not toll the limitation period.  *See Duncan v. Walker*, 533 U.S. at 181-182 (application for federal habeas corpus review does not toll one-year limitation period under AEDPA).  However, statutory tolling, pursuant to 28 U.S.C. § 2244(d)(2), extended the one-year deadline for twelve days during the pendency of Mr. Thomas' post-appeal motion for new trial, and for an additional fifty-nine days during the pendency of his initial state habeas proceeding.  Mr. Thomas' motion for new trial tolled the filing period for twelve days from July 29, 2002, the date it was filed, to August 9, 2002, the date it was denied.  His initial state habeas proceeding tolled the filing period for fifty-nine days from January 13, 2003, the date it was filed, to March 12, 2003, the last day on which Mr. Thomas could have appealed the February 10, 2003, denial of the petition, which he failed to do.  *See Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2000) ("regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law") (emphasis in original); Rule 12-201(A)(2), N.M.R.A. (2006) (time for appeal from dismissal of state habeas corpus petition by state district court in New Mexico is thirty days).  Thus, Mr. Thomas had until July 16, 2003, to file this action.  Because he did not file this action until February 4, 2004, his Application was untimely under the one-year limitation period in 28 U.S.C. § 2244(d)(1) by more than six months.  Additionally, because it was filed after July 16, 2003, Mr. Thomas' second state habeas petition had no effect on tolling once the one-year limitation period had expired.  *See Long v. Wilson,* 393 F.3d 390, 394-395 (3rd Cir. 2004) ("an untimely state (continued...)

14

finds that Respondents waived the statute of limitations defense by failing to assert it in a timely manner.

22.    There is a conflict in the federal circuit courts over whether a state's failure to raise the AEDPA statute of limitations defense in its answer waives the defense, precluding dismissal of a § 2254 habeas petition on that ground.  Both the Ninth and the Sixth Circuits have held that a state's failure to assert the AEDPA statute of limitations in its first responsive pleading constitutes a waiver of the defense and excuses a petitioner's failure to file a habeas petition within the limitation period.  *See Nardi v. Stewart*, 354 F.3d 1134, 1140-1142 (9th Cir. 2004) (court held that state waived its AEDPA statute of limitations defense by failing to assert the defense in its first responsive pleading and court lacked authority to *sua sponte* dismiss habeas petition as time-barred after answer was filed); *Scott v. Collins*, 286 F.3d 923, 927-931 (6th Cir. 2002) (holding that state's failure to raise AEDPA statute of limitations defense in its first responsive pleading waived the defense and that district court erred in *sua sponte* dismissing habeas petition as untimely).  However, the Eleventh Circuit has held that a court can dismiss a habeas petition, *sua sponte*, even after an answer has been filed that fails to assert the defense.  *See Day v. Crosby*, 391 F.3d 1192, 1195 (11th Cir. 2004), *cert. granted*, 126 S. Ct. 34 (U.S. Sept. 27, 2005) (No. 04-1324) (state's erroneous concession of timeliness in its answer did not compromise district court's authority to dismiss  habeas petition, *sua sponte*, as untimely under AEDPA).[14]  *Cf. Long v. Wilson*, 393 F.3d 390, 401-403 (3rd Cir. 2004) (magistrate judge could raise statute of limitations defense *sua sponte* after answer was filed; ultimate

---

[13](...continued)

post-conviction is not 'properly filed' [under § 2244 (d)(2)] for purposes of tolling . . . and, in any event, the limitations period had already run when it was filed.") (citation omitted).

[14]The United States Supreme Court held oral argument in the *Day v. Crosby* case on February 27, 2006.  *See* "www.supremecourtus.gov/oral_arguments/argument_calendars.html."

issue was whether habeas petitioner was prejudiced by assertion of AEDPA statute of limitations defense after answer was filed; prejudice turned on factors such as how late in the proceedings the defense was raised, whether petitioner had an opportunity to respond, and whether respondent acted in bad faith).

23.     While the Tenth Circuit has not addressed the issue of waiver of the AEDPA statute of limitations in a published decision, it has held that the limitation period is not jurisdictional. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (Section 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling). And in an unpublished decision, the Tenth Circuit has acknowledged that the statute of limitations defense may be waived if not raised in a § 2254 habeas proceeding. *See Davis v. LeMaster*, No. 99-2161, 216 F.3d 1086 (Table), 2000 W.L. 702408, at *1 n.2 (10th Cir. May 26, 2000) (unpublished) (respondents' failure to raise AEDPA statute of limitations defense in habeas proceeding resulted in waiver of the defense).

24.     Here, Respondents did not raise the statute of limitations defense in their answer and did not assert the defense until they filed their Motion to Dismiss more than nineteen months after Mr. Thomas filed his Application. This was nearly four months after Respondents filed the Record Proper and the additional materials required by the Court to evaluate Mr. Thomas' Application. The Court agrees with cases holding that the AEDPA statute of limitations is an affirmative defense governed by Fed. R. Civ. P. 8(c)[15] that must generally be raised in the first responsive pleading to avoid being waived. *See, e.g., Scott v. Collins*, 286 F.3d 923, 927-928 (6th Cir. 2002). In this case, where Respondents did not raise the statute of limitations defense in a timely manner in their Answer and waited almost a year and a half after filing their Answer and nearly four months after filing the Record

---

[15]Fed. R. Civ. P. 8(c) applies to this case pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts which provides that, "[t]he Federal Rules, to the extent that they are not inconsistent with any statutory provisions or these Rules, may be applied to a proceeding under these Rules."

Proper to assert the defense, the Court concludes that Respondents waived the defense. Therefore, the Court will consider Mr. Thomas' Application on the merits.

### III.  Claims for Habeas Corpus Relief

#### A.  Standards of Review

25.     The provisions of 28 U.S.C. § 2254(d), as amended by AEDPA, govern this case.[16] Review of state court decisions under AEDPA is highly deferential. The Court cannot grant Mr. Thomas habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in his state court proceeding: (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2). The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.[17]

26.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. at 71, quoting *Williams v. Taylor*, 529 U.S. at 412.

27.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413. A state court decision

---

[16]The standards in AEDPA apply to this case because the Application was filed after the effective date of AEDPA which was April 24, 1996. *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003).

[17]*See, e.g., Bell v. Cone*, 543 U.S. 447 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Bush v. Neet*, 400 F.3d 849 (10th Cir. 2005); *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004); *Miller v. Mullen*, 354 F.3d 1288 (10th Cir. 2004).

is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . .  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. at 8). *See also Woodford v. Visciotti*, 537 U.S. at 24 (noting presumption that state courts know and follow the law); *Miller v. Mullen*, 354 F.3d at 1292-1293 (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law).  Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply.  So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[18]  Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.

28.    Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent  if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[18]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with  respect to that claim.").

case." *Williams v. Taylor*, 529 U.S. at 413. However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

      29.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. at 528.

      30.     The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). If the state court did not adjudicate a claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)*, citing Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions." *Id.* at 816, quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989). See *also* 2 Randy Hertz and James S. Liebman, Federal Habeas Corpus Practice and Procedure, § 32.2, at 1421-1422 (4th ed. 2001) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### B. Analysis

31.     Subject to the foregoing standards, the Court considers Mr. Thomas' claims in this proceeding.

### 1. Unlawful Indictment Based on Hearsay Testimony at Grand Jury

32.     Mr. Thomas contends that he was unlawfully indicted based on the hearsay testimony of Officer Lujan to the grand jury.  Mr. Thomas contends that Officer Lujan testified at the grand jury on behalf of Officer Rajaee about Officer Rajaee's actions and observations on the date of Mr. Thomas' arrest without first-hand knowledge of those events.  Therefore, Mr. Thomas contends, Officer Lujan's testimony about those events to the grand jury was inadmissable hearsay.  *See* Application at 7.  *See also* Attachment to Application at 3rd, 43rd and 126th pages; **Motion to Amend to [sic] Evidentiary [H]earing** (*Doc. 20*) at 8.[19]  Mr. Thomas appears to argue that his indictment was invalid because it was based on this inadmissible hearsay testimony which violated his rights to due process and equal protection under the United States Constitution.  *See id.* at 8.

33.     Mr. Thomas raised the isssue of the alleged grand jury hearsay testimony of Officer Lujan in his direct appeal.  *See* Answer, Exhibit J at 4 and Exhibit L at 12.  The New Mexico Court of Appeals, relying on *State v. Maldonado*, 604 P.2d 363 (N.M. 1979),[20] held that there was

---

[19]Mr. Thomas' appellate counsel summarized this argument in a motion to amend the docketing statement filed with the New Mexico Court of Appeals when she stated: "[T]he State allowed another officer, Officer Lujan, to testify as to Officer Rajaee's actions and observations on the day of Mr. Thomas's arrest, despite the fact that Officer Lujan had no personal knowledge of these events.  Although Officer Lujan did not repeat his hearsay testimony at trial, Mr. Thomas maintains that Officer Lujan should not have been allowed to testify before the grand jury and the indictment and subsequent convictions must be reversed."  Attachment to Application at 126th page.

[20]In *State v. Maldonado*, 604 P.2d at 672, the New Mexico Supreme Court held that the receipt of inadmissible evidence by a grand jury was not grounds for invalidating an indictment as a violation of due process

(continued...)

no basis for reversal on this issue because there was no showing that Officer Lujan presented the alleged hearsay testimony at trial.  *See* Answer, Exhibit M at 6.[21]

34.     In this proceeding, Mr. Thomas does not assert that the alleged hearsay statements by Officer Lujan about Officer Rajaee were admitted, or objected to, at trial.[22]  Although a transcript of the grand jury proceedings in question is not before the Court, it does not have to be.  Even if Officer Lujan did give hearsay testimony about Officer Rajaee to the grand jury, the New Mexico Court of Appeal's conclusion that such testimony did not warrant reversal was in accord with applicable United States Supreme Court precedent.  In *Costello v. United States*, 350 U.S. 359, 363-364 (1956), the United States Supreme Court held that a defendant's conviction could be sustained under the Fifth Amendment to the United States Constitution even if *only* hearsay evidence was presented to the grand jury which indicted him.  In *Costello*, the Supreme Court noted that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act."  *Id.* at 362.  In reaching its decision, the Supreme Court stated:

> An indictment returned by a legally constituted and unbiased grand jury, [footnote omitted] like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.  The Fifth Amendment requires nothing more.

*Id.* at 363.  Thus, in Mr. Thomas' case the state court's decision on this issue was not contrary to clearly established federal law, as established by the United States Supreme Court, and did not involve

---

[20](...continued)
where the inadmissible evidence was not admitted at trial.

[21]Mr. Thomas reasserted this argument in his petition for certiorari to the New Mexico Supreme Court.  *See* Answer, Exhibit N at 1, 8.

[22]Moreover, a review of the trial transcript shows that Officer Lujan's trial testimony did not include this hearsay testimony.  *See* Transcript of Proceedings, July 20, 1999, at TR-83-TR-97.

an unreasonable application of such law.  *See* 28 U.S.C. § 2254(d)(1).  Nor is there any indication

in the record that the state court decision on this issue was based on an unreasonable determination

of the facts, given the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).

Accordingly, applying the deferential AEDPA standard of review, the Court recommends that federal

habeas relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with respect to this claim.

### 2.  *Unlawful Conviction Based on Prosecution's Knowing Use of False and Perjured Testimony at Trial*

35.     Mr. Thomas asserts that he was unlawfully convicted based on the prosecution's

knowing use of false and perjured testimony at trial by Officers Rajaee and Lujan, which denied him

a fair trial and violated his federal constitutional rights to due process of law and equal protection.

*See* Application at 6, 7; *see also* Attachment to Application at 3rd,  26th-28th, 45th-46th, 48th,

128th, 159th, 164th, 168th-170th, 189th, and 208th-210th pages; ***Motion for Evidentiary [H]earing***

(*Doc. 13*) at 10.  The gist of Mr. Thomas' claim appears to be that Officer Rajaee lied under oath at

trial by testifying that Mr. Thomas said, while Chris Thomas was exchanging cocaine for the gun, "to

hurry up and finish the deal and to hurry up and get the gun,"[23] and that Officer Lujan lied under oath

at trial by giving the same or similar testimony in order to back up the false testimony of

Officer Rajaee.[24]   In support of his contention that Officer Rajaee lied in his testimony at trial,

Mr. Thomas points to alleged inconsistencies in the record between Officer Rajaee's testimony at trial

and statements in his police report about what he heard Mr. Thomas say during the exchange.  *See*

Application at 7; *see also* Attachment to Application at 48th, 117th - 118th, 128th, 164th, 210th, and

---

[23]*See* Attachment to Application at 45th page;  *see also* Attachment to Application at 164th page.

[24]*See* Attachment to Application at 46th, 208th, and 209th pages.

217th pages; ***Motion for Evidentiary [H]earing*** (*Doc. 13*) at 7 and 8.[25]  Mr. Thomas also alleges, in portions of the Attachment to his Application, that Officer Rajaee was not present during the exchange of the cocaine for the gun. *See, e.g.,* Attachment to Application at 116th, 128th, and 146th pages.[26]

36.     In his direct appeal, Mr. Thomas attempted to raise the issues of Officer Rajaee's alleged false testimony and his alleged absence from the exchange transaction, by filing a motion to amend the docketing statement to assert these issues.  *See* Answer, Exhibit L at 2.  However, the New Mexico Court of Appeals denied the motion on the procedural ground that these issues were not preserved below. *See* Answer, Exhibit M at 2.[27]  In his direct appeal, Mr. Thomas acknowledged that he failed to preserve these issues at trial but he attributed this failure to ineffective assistance of counsel. *See*  Answer, Exhibit L at 2 and Exhibit N at 9.

37.     In his direct appeal, Mr. Thomas did not raise the issue of Officer Lujan's alleged false testimony at trial. *See* Answer, Exhibits J, L and N.  However, it appears that Mr. Thomas did raise this issue in his first and second state habeas proceedings, and in his petition for writ of certiorari

---

[25]Mr. Thomas' state appellate counsel gave the following description of this alleged inconsistency in a motion to amend the docketing statement and memorandum in opposition to summary affirmance filed with the New Mexico Court of Appeals: "According to Officer Rajaee's police report, Mr. Thomas also said, 'hurry up,' while watching the transaction.  At trial, however, Officer Rajaee testified that Mr. Thomas said, 'hurry up, get the gun' or 'hurry up, do the deal.'"  Attachment to Application at 117th and 118th pages.

[26]In his direct appeal, Mr. Thomas argued that a confidential informant, not Officer Rajaee, was the person who offered to exchange the gun for cocaine on the day of Mr. Thomas' arrest. *See* Answer, Exhibit L at 2, 13-14.

[27]Mr. Thomas reasserted this argument in his direct appeal, in the context of a challenge to the denial of his motion to amend the docketing statement, in his petition for certiorari to the New Mexico Supreme Court which was summarily denied. *See* Answer, Exhibit N at 1, 9-10.

seeking review of the denial of his second state habeas petition.  *See* Answer, Exhibit S at 10th - 11th, and 62nd pages; Exhibit Y at 4th page; Exhibit CC at 2nd - 3rd pages.

38.    It is possible that Mr. Thomas' false testimony claim concerning Officer Rajaee is procedurally barred because the claim was not preserved at trial and the New Mexico Court of Appeals relied on that procedural ground to deny Mr. Thomas' motion to amend the docketing statement to assert the claim.   However, Respondents have not asserted procedural default as a defense in this proceeding.  Moreover, Mr. Thomas appears to contend that he did not preserve this claim because he was denied effective assistance of counsel at trial which might excuse the default. *See* Application at 9; *see also Coleman v. Thompson*, 501 U.S. 722, 753-754 (1991) (constitutionally ineffective assistance of counsel may establish cause which excuses procedural default of claims).

39.    While the Court may raise procedural default in this proceeding *sua sponte*,[28] it is not obligated to do so.  In this case, substantial time and resources have been devoted by both sides to litigating the merits of Mr. Thomas' claims and it would be necessary to request supplemental briefing if the procedural bar issue was raised *sua sponte*.  *See Hardiman v. Reynolds*, 971 F.2d at 505 (habeas petitioner must be given adequate opportunity to respond to state procedural bar issue after it is raised by the court *sua sponte*).  As the Tenth Circuit noted in the *Hardiman* case, *sua sponte* assertion of procedural default does not always serve the interest of judicial economy:

> Although a federal court may sometimes be able to conserve its resources by disposing of a case on the ground of procedural default, procedural disposition will not always be the most efficient course.  For example, where the existence of the default or its justification under *Coleman's* cause and prejudice test is not clear from the record, it may be an inefficient use of resources to engage in a sua sponte search

_____

[28]*See Hardiman v. Reynolds*, 971 F.2d 500, 504-505 (10th Cir. 1992) (court may raise state procedural default *sua sponte* in § 2254 habeas proceeding); *see also Trest v. Cain*, 522 U.S. 87, 89-90 (1997) (court is not required to raise defense of procedural bar *sua sponte* in § 2254 habeas proceeding where respondent fails to do so).

for a state procedural default. . . . Similarly, sua sponte consideration of a state procedural default might be inefficient where substantial resources have already been spent litigating the merits of a petition or where the defaulted issue is recurring.

*Hardiman v. Reynolds*, 971 F.2d at 503 n. 5 (10th Cir. 1992). In this case, where Respondents failed to assert the defense of procedural default and the parties have already expended substantial resources in litigating the merits of Mr. Thomas' claims, procedural disposition would be inefficient. Therefore, the Court has determined not to raise procedural default *sua sponte* and will address Mr. Thomas' false testimony claim concerning Officer Rajaee on the merits. Moreover, because this claim was denied by the New Mexico Court of Appeals on procedural grounds and there is no decision of the claim on the merits, the Court will review the claim under the pre-AEDPA standard of review.

40.    To justify habeas relief on grounds of prosecutorial misconduct, Mr. Thomas must show that the prosecution's actions, when viewed in the overall context of the trial and considering the totality of the circumstances, were "so egregious as to render the trial fundamentally unfair," *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998), citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), and "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Hoxsie v. Kerby*, 108 F.3d 1239, 1243 (10th Cir. 1997), quoting *Donnelly*, 416 U.S. at 643.

41.    The prosecution's knowing use of perjured testimony, or knowing failure to disclose that the testimony used to obtain a conviction was false, requires the reversal of a conviction if there is any reasonable likelihood that the false testimony could have affected the jury's decision. *See, e.g., Giglio v. United States*, 405 U.S. 150, 153-154 (1972); *see also United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998) ("Knowing use of perjured testimony by the prosecution violates

a defendant's due process rights.") (citing, *inter alia*, *Giglio*, 405 U.S. at 153).   However, Mr. Thomas has a "high burden" in showing that the prosecution knowingly presented false testimony, and the question of whether or not a witness testified truthfully is generally a credibility matter within the province of the jury.  *See Bankert v. Shanks*, No. 97-2170, 1998 WL 255043, at *3 (10th Cir. May 15, 1998) (unpublished).  "Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991), citing, *inter alia*, *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 674 (7th Cir. 1980).  And the "[p]resentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury."  *Tapia v. Tansy*, 926 F.2d at 1563, quoting *United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978).  Mr. Thomas has failed to establish that his claims related to the alleged use of false and perjured testimony by Officer Rajaee warrant habeas relief in this case.

42.     A review of Officer Rajaee's police report shows that it contains only a brief statement about what Officer Rajaee heard Mr. Thomas say during the exchange transaction.  That statement was as follows: "Ronnie Thomas was looking on intently, repeatedly yelling for Chris to hurry up. Ronnie appeared to actually be supervising Chris as he made the drug deal."  *See* State of New Mexico Uniform Incident Report dated January 11, 1999, prepared by J. Rajaee, at 7th page.[29]

43.     Officer Rajaee's trial testimony about what Mr. Thomas said during the exchange transaction is set forth in paragraph 7, above.  There is no mention in Officer Rajaee's trial testimony

---

[29]This police report was requested by the Court in its ***Memorandum Opinion and Order*** (*Doc. 22*), filed on March 2, 2005, to supplement the record.

of Mr. Thomas saying, as Mr. Thomas has alleged in this proceeding, "to hurry up and finish the deal and to hurry up and get the gun." *See* Transcript of Proceedings, July 20, 1999, at TR-21 - TR-82.

44.     The Court does not find that Officer Rajaee's trial testimony about what he heard Mr. Thomas say during the exchange transaction is inconsistent with his police report.  Although Officer Rajaee's trial testimony was more detailed than the statement in his police report, and included the additional words "just get it," "get it," and "just bring it," Officer Rajaee indicated in both his police report and in his trial testimony that Mr. Thomas was watching the exchange transaction closely, telling his nephew repeatedly in a loud voice to hurry up, and giving Officer Rajaee the impression that he was supervising the transaction.  Moreover, even if these statements are viewed as inconsistent because of the added details in Officer Rajaee's trial testimony, Mr. Thomas has failed to show that the trial testimony was false and, as such, knowingly used by the prosecution.

45.     Mr. Thomas' additional claim that Officer Rajaee lied about what was said during the exchange transaction because he was not present at the transaction is conclusory and without merit. *See United States v. Spadafora*, 200 F.2d 140, 143 (7th Cir. 1952) (habeas petitioner not entitled to relief where he merely makes conclusory allegations of perjury).  Mr. Thomas has failed to point to any evidence that Officer Rajaee was not present at the exchange transaction, and a review of the trial transcript shows that in Mr. Thomas' own trial testimony, he placed Officer Rajaee at the scene of the exchange.[30]

---

[30]During his direct examination at trial, Mr. Thomas gave the following testimony placing Officer Rajaee at the scene of the exchange transaction:

    Q.  You said you felt something bad was going on.  What exactly led you to believe that?

                                                                                    (continued...)

46.     Mr. Thomas' claim that Officer Lujan lied under oath at trial to back up Officer Rajaee's false testimony about what Mr. Thomas said during the exchange transaction is also conclusory and without merit.  In his only specific allegation about this claim, Mr. Thomas contends that Officer Lujan testified at trial that Mr. Thomas said, "[H]urry up and finish the deal and to hurry up and get the gun."[31]  However, a review of the trial transcript shows that Officer Lujan made no such statement during his trial testimony and gave no testimony at all about what Mr. Thomas said during the exchange transaction.  *See* Transcript of Proceedings, July 20, 1999, at TR-83 - TR-97.

47.     Based on the foregoing, the Court recommends that federal habeas relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with respect to Mr. Thomas' claims that he was unlawfully convicted based on the prosecution's knowing use of false or perjured testimony at trial by Officers Rajaee and Lujan.

---

[30](...continued)

A.  Well, I had talked to Officer Rajaee about the gun, and he didn't want to come up and write a bill of sale for the gun with my nephew.  Then all of sudden I'm coming back out, you know, and my other nephew, the minor, is up at his truck.  And, you know, two and two is four, so - -

Q.  So you - -

A.  I'm kind of, you know - -

Q.  You know that this - - apparently you knew at that point that - - well, Officer Rajaee had his weapon, he was trying to get rid of it, and all of sudden you see - - how old is Chris?

A.  I think Chris is 16.

Q.  And this - - Chris is trying to get this - -

A.  Well, it had to be - - it had to be something like that to where - - because, like I say, all those kids up in that area, they're gun crazy.  And, yeah, I'm pretty sure that's what was occurring, you know, that he was trying to buy the gun from Officer Rajaee.

Transcript of Proceedings, July 21, 1999, at TR-28-TR-29.

[31]*See* Attachment to Application at 46th page; *see also id.* at 208th and 209th pages.

### 3. *Unlawful Failure to Disclose Evidence Prior to Trial*

48.      Mr. Thomas contends that the prosecution violated his constitutional rights by failing to disclose evidence prior to trial.[32]   From his filings, Mr. Thomas appears to assert that the prosecution violated his rights to due process of law and equal protection by failing to disclose that Officer Rajaee would testify at trial that Mr. Thomas made the following additional statements during the exchange transaction which were not included in Officer Rajaee's police report: "just get it," "get it," and "just bring it.[33]

49.      Mr. Thomas attempted to raise this issue in his direct appeal by filing a motion to amend his docketing statement to add the issue to his appeal.  *See* Answer, Exhibit L at 2, 14. However, the New Mexico Court of Appeals denied the motion on the procedural ground that the issue was not preserved below.  *See* Answer, Exhibit M at 2.[34]  In his direct appeal, Mr. Thomas acknowledged not preserving the issue at trial, but he attributed this failure to ineffective assistance of counsel.  *See*  Answer, Exhibit L at 2, and Exhibit N at 9.

50.      It is possible that Mr. Thomas' claim concerning the alleged non-disclosure of Officer Rajaee's trial testimony is procedurally barred because the claim was not preserved at trial and the New Mexico Court of Appeals relied on that procedural ground to deny Mr. Thomas' motion

---

[32]*See* Application at 6; Attachment to Application at 2nd, 3rd, 160th and 168th pages.  *See also **Motion For Evidentiary [H]earing** (Doc. 13)* at 5, 7-9.

[33]Mr. Thomas has described the additional statements by Officer Rajaee as "hurry up and finish the deal" and "hurry up and get the gun."  Attachment to Application at 45th - 46th, and 164th pages.  *See also **Motion for Evidentiary [H]earing** (Doc. 13)* at 7.  However, these statements do not appear in Officer Rajaee's testimony in the trial transcript.  *See* Transcript of Proceedings, July 20, 1999, at TR-31-TR-42.  Therefore, the Court has used the language of the additional statements as they actually appear in the trial transcript.

[34]Mr. Thomas reasserted this argument in his direct appeal, in the context of a challenge to the denial of his motion to amend the docketing statement, in his petition for certiorari to the New Mexico Supreme Court which was summarily denied.  *See* Answer, Exhibit N at 1, 9-10.

to amend the docketing statement to assert the claim. However, Respondents have not asserted procedural bar as a defense in this proceeding. Moreover, Mr. Thomas appears to contend that he did not preserve this claim because he was denied effective assistance of counsel at trial which might excuse the default. *See* Application at 9; Attachment to Application at 160th and 185th pages. For the same reasons discussed in paragraph 39, above, the Court has determined that it will not raise procedural default *sua sponte* with regard to this issue and will address Mr. Thomas' non-disclosure claim on the merits.

51.     The suppression of material evidence favorable to the defense by the prosecution in a state criminal case can violate the defendant's due process rights and is cognizable in a post-conviction proceeding. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, the Constitution "does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *See Smith v. Sec'y. of New Mexico Dep't. of Corrections*, 50 F.3d 801, 823 (10th Cir. 1995). "Due process only requires the disclosure of material exculpatory evidence which, if suppressed, would deprive the defendant of a fair trial." *See id.* at 824 (internal quotation marks and citation omitted). Therefore, in order to establish a *Brady* violation, Mr. Thomas must show that the evidence in question was: (a) suppressed by the prosecution; (b) favorable to him; and (c) material. *See id.* at 824. Because a *Brady* claim involves mixed questions of law and fact, it is entitled to *de novo* review under the pre-AEDPA standard of review. *See id.* at 818, n.26.

52.     In this case, even assuming that the evidence of Officer Rajaee's additional statements should otherwise have been suppressed, which the Court need not decide, Mr. Thomas has failed to show that Officer Rajaee's testimony about the additional statements made by Mr. Thomas during the exchange transaction was favorable to him. "The second element of a *Brady* claim requires proof

the evidence in question was exculpatory, or favorable, to the defendant." *See Smith v. Sec'y. of New Mexico Dep't. of Corrections*, 50 F.3d at 825.  Impeachment evidence falls within the *Brady* rule, "because impeachment is integral to a defendant's constitutional right to cross-examination." *Id.* (internal quotation marks and citations omitted).  This point is especially true when the credibility of a witness is material to the question of guilt.  *Id.*, quoting *United States v. Fleming*, 19 F.3d 1325, 1330 (10th Cir. 1994).  However, there is no duty to disclose inculpatory or neutral evidence.  *See United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996); *United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989).

53.    Officer Rajaee's testimony that Mr. Thomas said "just get it," "get it," and "just bring it," during the exchange transaction incriminated Mr. Thomas by implying that "it" was the gun involved in the transaction and that Mr. Thomas was encouraging his nephew to carry out the transaction.  Thus, this testimony by Officer Rajaee was consistent with the prosecution's theory of the case that Mr. Thomas was aware of, and encouraged, the exchange transaction.[35]  This testimony did not support Mr. Thomas' theory of the case that he was not involved in the transaction and that he was yelling at his nephew to "come home to grandma" during the transaction.[36]  Additionally, this testimony by Officer Rajaee, in and of itself, had little or no impeachment value.  It was not inconsistent with Officer Rajaee's police report and there is no evidence, or claim by Mr. Thomas, that the prosecution withheld the police report from the defense thereby preventing Mr. Thomas' lawyer from attempting to impeach Officer Rajaee regarding his omission of the statements "just get it," "get it," and "just bring it," from the police report.  Thus, the Court concludes that these

---

[35]*See* Transcript of Proceedings, July 22, 1999, at TR-5 (closing argument at trial by prosecution).

[36]*See* Transcript of Proceedings, July 22, 1999, at TR-16 (closing argument at trial by defense).

additional statements in Officer Rajaee's trial testimony were not evidence favorable to Mr. Thomas sufficient to establish a *Brady* violation.

54.     Mr. Thomas has also failed to meet the materiality element of *Brady*.  This third element of a *Brady* claim requires proof that the suppressed evidence was "material either to guilt or to punishment."  *Brady*, 373 U.S. at 87.  Implicit in the materiality requirement "is a concern that the suppressed evidence might have affected the outcome of the trial."  *Smith v. Sec'y. of New Mexico Dep't. of Corrections*, 50 F.3d at 826, quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976).  Favorable evidence is "material," and constitutional error results from its suppression, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985).  A reasonable probability of a different result is "shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.  *Kyles v.* Whitley, 514 U.S. at 434 (internal quotation marks and citation omitted).  When suppressed evidence is made available during the course of a trial, "the materiality inquiry focuses on whether earlier disclosure would have created a reasonable doubt of guilt."  *United States v. Young*, 45 F.3d 1405, 1408 (10th Cir. 1995); *see also United States v. Woodlee*, 136 F.3d 1399, 1411-1412 (10th Cir. 1998) (information given to defendants at trial was not material where evidence was disclosed with first trial witness, defendants had opportunity to cross-examine every witness about the information, defendants did not seek a continuance, and earlier disclosure would not have created a reasonable doubt as to guilt).

55.     In this case the additional statements by Officer Rajaee were disclosed during his direct testimony and Mr. Thomas had the opportunity to cross-examine him about the statements or seek

a continuance if he felt prejudiced which he did not do. Officer Rajaee was the first witness to testify and Mr. Thomas had the opportunity to cross-examine Officer Rajaee and all of the other witnesses about his testimony and the opportunity to respond to the additional statements in his testimony. Moreover, based on the record, the Court does not believe that earlier disclosure of the additional statements to Mr. Thomas would have created a reasonable doubt as to his guilt. Thus, the Court concludes that the additional statements in Officer Rajaee's trial testimony were not material and Mr. Thomas is not entitled to relief based on the alleged *Brady* violation. For the foregoing reasons, the Court recommends that federal habeas relief be **DENIED** with respect to Mr. Thomas' claim that the prosecution violated his constitutional rights by failing to disclose evidence prior to trial.

### 4.  Ineffective Assistance of Counsel

56.     Mr. Thomas contends that his trial counsel was ineffective in (a) failing to investigate witnesses and call them to testify at trial; and (b) failing to object to false testimony by Officers Rajaee and Lujan at trial and failing to impeach them with their false testimony. *See* Application at Additional Page for Item 6, and 9. Mr. Thomas refers the Court to his state habeas proceedings for more information about these claims. *See* Application at 9; ***Motion for Evidentiary [H]earing*** (*Doc. 13*) at 12. While the allegations in Mr. Thomas' state habeas petitions are mostly conclusory, they provide some details about these claims.

### a.  Failure to Investigate Witnesses and Call Them to Testify at Trial

57.     In his first state habeas proceeding, Mr. Thomas claimed that his trial counsel, Charles Knoblauch, was ineffective in failing to investigate exculpatory witnesses and call them to testify at trial. *See* Answer, Exhibit S at 23rd, 26th-30th, and 38th pages. In the state habeas petition Mr. Thomas identified the witnesses as his nephew, Chris Thomas, whom he described as a "key

witness," and Vernon Green and John Bacon.  *See* Answer, Exhibit S at 26th-28th, and 38th pages.
The petition also mentioned a minor named Walter Addings.  *Id.* at 29th and 38th pages.  With the
exception of Chris Thomas, the petition did not indicate with any specificity what the testimony of
these witnesses would be.[37]  The petition stated that Chris Thomas would exonerate his uncle by
testifying that "Ronnie Thomas his uncle dinot [sic] give him no [sic] cocaine and dinot [sic] tell him
to do no [sic] drug deal with the C-I in the case or Detective Rajaee ho [sic] [I] do not no [sic]."
Answer, Exhibit S at 28th page.  Mr. Thomas did not include an ineffective assistance of counsel
claim in his second state habeas petition.  *See* Answer, Exhibit Y.[38]

---

[37]The first state habeas petition alleged that "Vernon Green can testify about fact's [sic] in the case about
Ronnie Thomas."  Answer, Exhibit S at 28th page.  The petition alleged that "John Bac[o]n was at B.C.D.C. = Jail
and wood [sic] have toll [sic] Mr. Knoblauch what he saw out in Founth [sic] of his apartment on 1-11-99."  *Id.*  The
petition alleged that Walter Addings "still has the gun and will testify about what happen[ed] to him and Chris in the
case on 1-11-99."  *Id.* at 29th page.  In the docketing statement filed in his direct appeal, Mr. Thomas alleged that he
told his trial counsel he wanted to call Anita Thomas, Teresa Thomas, Chris Thomas, Consuelo Quinones and
Anthony Garcia to testify that he was not involved in any drug transaction.  *See* Answer, Exhibit J at 3.  He also alleged
that Quinones would testify that Mr. Thomas was only trying to get his nephew to return to the apartment.  *Id.*

[38]The Court notes that Mr. Thomas attached to his Application in this proceeding a copy of what appears to
be an acknowledged, but unsworn, statement of Chris Thomas that states:

> To Whom this may concern[.] [M]y name is Christopher Arron Thomas[.]  Case
> JR99-61  [M]y uncle is Ronnie Jerome Thomas[.]  [H]e was not involved in this
> case[.]  [H]e was no where [sic] when this situation ocured [sic] [.]  [H]e was no
> where [sic] around and what happened was [I] was walking from the store and I
> ran into some guy who wanted to trade a gun and I was by my self [sic] and I told
> him to wait there and I'll be back[.]  [T]hen I whent [sic] back around the corner
> by my
> self [sic] and purchased the gun by my self [sic] and my uncle was no where [sic]
> around and had no part in this case or at all had been around.

*See* Attachment to Application at 14th page.  Mr. Thomas also attached to his Application a copy of what appears to
be a partial transcript of a hearing where Chris Thomas was being questioned.  *See* Attachment to Application at 15th-
18th pages.

58.     Mr. Thomas raised this claim in his direct appeal.  *See* Answer, Exhibit J at 3-4, and Exhibit N at 1-3, and 9.[39]  The New Mexico Court of Appeals, noting that a defendant must show that his counsel did not exercise the skill of a reasonably competent attorney and that he was prejudiced because his counsel's failure rendered the verdict unreliable, held that the decision about who to call as a witness was a matter of tactics and strategy and that such matters do not demonstrate ineffective assistance of counsel.  *See* Answer, Exhibit M at 6.  Because the state courts decided this issue on the merits, and concluded that there was no constitutionally ineffective assistance of counsel by Mr. Thomas' trial counsel, the Court will apply the deferential AEDPA standard of review to this claim.

59.     To establish constitutionally ineffective assistance of counsel, Mr. Thomas must show that (a) his trial counsel's performance was deficient; and (b) the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  This Court "may address the performance and prejudice components in any order, but need not address both if Mr. [Thomas] fails to make a sufficient showing of one."  *Cooks v. Ward*, 165 F.3d 1283, 1292-1293 (10th Cir. 1998).  To establish deficient performance, Mr. Thomas must show that his attorney's representation "fell below an objective standard of reasonableness."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland v. Washington*, 466 U.S. at 688).  To establish prejudice to his defense,

---

[39]In his docketing statement filed with the New Mexico Court of Appeals, Mr. Thomas identified these witnesses as Anita Thomas, Teresa Thomas, Chris Thomas, Consuelo Quinones and Anthony Garcia.  Answer, Exhibit J at 3.  He argued that these individuals would testify that he was not involved in the drug transaction.  *Id.*  In his memorandum in opposition to proposed summary affirmance filed with the New Mexico Court of Appeals, Mr. Thomas identified these witnesses as Chris Thomas, Vernon Green, John Bacon and Anthony Garcia, and he acknowledged that they had criminal records.  *See* Answer, Exhibit L at 13.  In his petition for certiorari filed with the New Mexico Supreme Court, Mr. Thomas identified these witnesses as Anita Thomas, Teresa Thomas, Chris Thomas, Consuelo Quinones, Anthony Garcia and John Bacon.  *See* Answer, Exhibit N at 2, 9.  The Court notes that Anita Thomas and Teresa Thomas did testify at trial.  *See* Transcript of Proceedings, July 21, 1999, at TR-8-TR-18.

Mr. Thomas must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [;] [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694). "Judicial scrutiny of counsel's performance must be highly deferential," and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

60.     Mr. Thomas' allegations regarding the witnesses other than Chris Thomas are conclusory. He makes little or no showing of what their testimony would have been and a minimal showing that their testimony would have been exculpatory. Conclusory allegations are insufficient to meet the prejudice prong of *Strickland*. *See United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based and conclusory allegations do not suffice); *Snyder v. Addison*, No. 03-6050, 89 Fed. Appx. 675, 681 (10th Cir. March 2, 2004) (unpublished) (conclusory allegations insufficient to meet prejudice prong of *Strickland*). Thus, the Court recommends that Mr. Thomas' claim with regard to the witnesses other than Chris Thomas be **DENIED**.

61.     The question regarding witness Chris Thomas is whether the adjudication on the merits by the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in an unreasonable determination of the facts.

36

62.     The record shows that Chris Thomas was being held on juvenile charges at the time of Mr. Thomas' trial.  *See* Answer, Exhibit J at 3.  It also shows that Chris Thomas was listed as a witness on Mr. Thomas' witness list and that Chris Thomas was present at the courthouse during the trial and could have been called to testify as a witness.  *See* Record Proper at RP0053; Transcript of Proceedings, July 20, 1999, TR-98-TR-99; TR-139-TR140; Transcript of Proceedings, July 21, 1999, TR-18-TR-19.  The record indicates that Mr. Thomas' attorney intended to call Chris Thomas as the first witness for the defense but deferred calling him as the initial witness so that Chris Thomas could meet with his attorney.  *See* Transcript of Proceedings, July 21, 1999, at TR-5-7.  The record also shows that a recess was taken during the trial so the prosecution could conduct discovery and interview Chris Thomas.  *See id.* at TR-18-TR-19.  After Chris Thomas met with his attorney,  the record shows that Mr. Thomas' attorney did not call Chris Thomas as a witness.  *See id.* at TR-19-TR-55.  Comments by the trial judge at a post-trial hearing on Mr. Thomas' motion for new trial suggest that Chris Thomas may have been advised by his counsel not to testify at Mr. Thomas' trial and that Mr. Thomas' attorney may have felt it was not in Mr. Thomas' best interest for Chris Thomas to testify.  *See* Transcript of Proceedings, May 2, 2001, TR-58-TR-59.  Moreover, an Addendum to the Motion for New Trial filed by Mr. Thomas with the trial court on September 19, 2000, stated that his trial attorney declined to call Chris Thomas at trial, over Mr. Thomas' objections, because it was his trial counsel's opinion that Chris Thomas was untruthful.  *See* Record Proper at RP0182.  Under these circumstances, it appears that the decision not to call Chris Thomas to testify was a tactical decision.  Chris Thomas was available at the courthouse to testify but was not called as a witness by the defense.  If Chris Thomas had been called as a witness he might have invoked his constitutional right not to testify, if such testimony resulted in self-incrimination; or he

might have been impeached on the basis of bias based on his relationship to Mr. Thomas, who was his uncle, and with evidence of his involvement in the exchange transaction. Given these circumstances, Mr. Thomas is unable to overcome the presumption that the decision by his lawyer not to call Chris Thomas as a witness fell within the range of sound trial strategy. *See United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (whether to call a particular witness is a tactical decision and matter of discretion for trial counsel). Therefore, with respect to this claim, Mr. Thomas has failed to satisfy the first *Strickland* prong that his attorney's conduct was deficient.

63.     Based on the foregoing, the Court concludes that the state court decision on this claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the Court recommends that federal habeas relief should be **DENIED** with respect to Mr. Thomas' claim with regard to calling Chris Thomas as a witness.

### b.  *Failure to Object to False Testimony by Officers Rajaee and Lujan and Impeach Them Regarding Their False Testimony*

64.     In his first state habeas petition, Mr. Thomas claimed that his trial counsel was ineffective in failing to object to false testimony by Officers Rajaee and Lujan at trial and failing to impeach them regarding their false testimony. *See* Answer, Exhibit S at 23rd-24th, 31st-35th, 39th-42nd, and 45th pages. Although the allegations in the state habeas petition are not entirely clear, Mr. Thomas appeared to allege that Officer Rajaee could have been impeached at trial with the omission from his police report of the additional statements made by Mr. Thomas during the exchange transaction that Officer Rajaee testified to at trial. *Id.* at 31st-32nd, and 40th-42nd pages.

With regard to Officer Lujan, Mr. Thomas appeared to allege that Officer Lujan could have been impeached at trial with statements he made during a pretrial interview on March 25, 1999, to the effect that what he could testify to in Mr. Thomas' case was the foot-chase and the apprehension of Ronnie Thomas and nothing else. *See* Answer, Exhibit S at 35th page.

65.     In the state courts, there was no decision on the merits on Mr. Thomas' claim that his trial counsel was ineffective in failing to object to false testimony by Officers Rajaee and Lujan at trial and failing to impeach them. Mr. Thomas only raised this claim in his first state habeas petition which the trial court mistakenly denied because it believed that Mr. Thomas' direct appeal was still pending. *See* Answer, Exhibits S and T. Because there was no decision on the merits, the Court reviews this claim independently and applies the pre-AEDPA standard of review by reviewing questions of law *de novo* and questions of fact for clear error. *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003); *Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001).

66.     With regard to Officer Rajaee, Mr. Thomas has failed to satisfy either prong of the *Strickland* test. First, Officer Rajaee's omission from his police report of Mr. Thomas' additional statements during the exchange transaction had little or no impeachment value. The information in the police report about Mr. Thomas' behavior during the exchange transaction was not inconsistent with Officer Rajaee's testimony at trial. Moreover, it is possible that Officer Rajaee could have explained the omission on cross-examination, for example by testifying that his police report was intended as a summary, rather than a detailed, record of the incident, designed to refresh the officer's memory of the investigation rather than as a complete recitation of all facts investigated. Additionally, Mr. Thomas' attorney, as a tactical matter, may have avoided asking Officer Rajaee about his omission of the additional statements from the police report to avoid drawing attention to

the statements which were incriminating to Mr. Thomas.  Thus, Mr. Thomas has failed to show that

his counsel's performance was deficient in failing to impeach Officer Rajaee with his omission of the

additional statements from his police report.  Second, even if Mr. Thomas' attorney had impeached

Officer Rajaee with his omission of the additional statements from his police report, Mr. Thomas has

failed to show that there was a reasonable probability that the outcome of the trial would have been

different.  *See Strickland*, 466 U.S. at 694 (to show prejudice, petitioner must show that but for his

counsel's errors there is a reasonable probability that the outcome of his trial would have been

different).  The impeachment of Officer Rajaee with his omission of the additional statements from

his police report would have drawn attention to the additional statements, which were incriminating,

and this could have been more harmful, rather than helpful, to Mr. Thomas' defense.  Therefore, Mr.

Thomas has failed to show that his attorney's performance with regard to Officer Rajaee was deficient

under the *Strickland* standard or that he was prejudiced by the attorney's deficient performance.

      67.    With regard to Officer Lujan, Mr. Thomas has made no showing that his trial counsel

could have impeached Officer Lujan with the statements he allegedly made during the pretrial

interview.  The record shows that Officer Lujan's testimony at trial was limited to the foot-chase and

apprehension of suspects that occurred after the exchange and related events.  *See* Transcript of

Proceedings, July 20, 1999, TR-83-TR- 97.  Therefore, his testimony was not inconsistent with his

alleged statements during the pretrial interview and had no impeachment value.  Thus, Mr. Thomas

has failed to show that his attorney's performance with regard to Officer Lujan was deficient under

the *Strickland* standard or that he was prejudiced by any deficient performance.  For these reasons,

the Court recommends that federal habeas relief should be **DENIED** with respect to Mr. Thomas'

claim of ineffective assistance of counsel regarding the failure to object to false testimony by Officers Rajaee and Lujan and failure to impeach them regarding their false testimony.

### 5. *Other Claims*

68.     Mr. Thomas has asserted other claims in his Application that are purely conclusory. These are his claims that (a) he was prejudiced because his criminal case was joined with those of other defendants and he was the only defendant to go to trial; and (b) he was denied unspecified hearing and trial transcripts necessary to prove his case.  *See* Application at Additional Page for Item 6.  These claims are conclusory and should be **DENIED** on that ground.  *See  Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based and conclusory allegations do not suffice).

69.     Finally, in various parts of his Application and other submissions, Mr. Thomas argues that he should be granted an evidentiary hearing.   Because all of the issues in this proceeding can be resolved on the record, the Court finds that an evidentiary hearing is unnecessary.   *See* 28 U.S.C. 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

### IV.  *Motion to Compel and  Motion For the Federal Court to "Adjudicate["] the [P]etition for [H]abeas Corpus Under 2254*

70.     Mr. Thomas has filed a ***Motion to Compel*** (*Doc. 28*) and a ***Motion For the Federal Court to "Adjudicate["] the [P]etition for [H]abeas Corpus Under 2254*** (*Doc. 36*).  These motions repeat allegations from Mr. Thomas' Application and ask the Court to rule on his Application for federal habeas relief or refer the Application to the Tenth Circuit Court of Appeals for decision.  They also request an evidentiary hearing on the issues raised in Mr. Thomas' Application.  Respondents

filed a response (*Doc. 30*) to the motion to compel which is contained in the same document as their Motion to Dismiss.  No other responses or replies were filed with regard to these two motions.  The Court has reviewed the motions and has also reviewed Respondents' response to the motion to compel.  Because the issues raised by these motions are addressed by the foregoing proposed findings, the Court recommends that these motions be **DENIED** as moot.

## <u>RECOMMENDED DISPOSITION</u>

For the foregoing reasons, the undersigned recommends that ***Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus as Time Barred and Without Merit*** (*Doc. 30*) be **DENIED** with respect to Respondents' contention that Mr. Thomas' Application is barred by AEDPA's one-year limitation period which Respondents have waived, and **GRANTED** with respect to Respondents' contention that Mr. Thomas' Application is without merit, and that Mr. Thomas' ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) be **DENIED** as without merit**,** and that this case be **DISMISSED WITH PREJUDICE**.  The undersigned further recommends that Mr. Thomas' ***Motion to Compel*** (*Doc. 28*) and his ***Motion For the Federal Court to "Adjudicate["] the [P]etition for [H]abeas Corpus Under 2254*** (*Doc. 36*) be **DENIED** as moot.

*Lourdes a. Martínez*
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**